UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE WATSON,

        Plaintiff,                          No. 11-15461

v.                                         District Judge Victoria A. Roberts
                                            Magistrate Judge R. Steven Whalen

CIENA HEALTHCARE MANAGEMENT,
INC., and BOULEVARD TEMPLE CARE
CENTER LLC,

        Defendants.

                                       /

**REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion for Summary Judgment [Doc. #28], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion be GRANTED IN PART AND DENIED IN PART, as follows:

(1) That as to Plaintiff's retaliation claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2614 *et seq*., the Motion be GRANTED, and the FMLA retaliation claim DISMISSED.

(2) That as to Plaintiff's FMLA interference claim, the Motion be DENIED.

(3) That as to Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L § 37.1101 *et seq*., the Motion be DENIED.

**I.   FACTS**

From 1997 to 2009, Ms. Watson was employed by United Methodist Retirement Communities ("United Methodist"), at their Boulevard Temple facility (a nursing home),

as a Competency Evaluated Nursing Aid ("CENA"). During the entire course of her employment with United Methodist, she suffered from hypertension/high blood pressure, which was diagnosed when she was 26 years old. *Doc. #23, Defendant's Exhibit H, Plaintiff's Deposition*, 19.  Ms. Watson testified that her condition was well-controlled with medication, but that when she did not take her medication, she had symptoms of dizziness, fatigue, shortness of breath and headaches, all of which affected her ability to do her job. *Id*. 21-34. For example, dizziness and fatigue might require her to stop work and sit down, as well as affect her ability to lift or pull patients. Shortness of breath would also slow her down and require her to ask for assistance. She would not be able to use the stairs. *Id*.

In late 2009, the Boulevard Temple facility was purchased by Defendants Ciena Healthcare Management, Inc. ("Ciena") and Boulevard Temple Care Center LLC ("BTCC"). *See Defendants' Exhibit A*, Asset Purchase Agreement.[1] The Purchase Agreement provided that the "employment of all employees of [United Methodist] shall terminate effective at the Effective Time" of closing, but that Ciena "intends to and will offer employment to all employees of Seller...upon terms consistent with [Ciena's] employment policy and practices." *Id*. § 7.12.2.

The effective date of the sale was originally contemplated to be November 1, 2009. In a letter dated October 23, 2009, Ciena offered employment to Ms. Watson "in the same capacity as you have been working," stating, "Your pay rate and associated

---

[1] Paragraph 3 of Plaintiff's Second Amended Complaint [Doc. #23] states, "Defendant Ciena and Boulevard Temple were single or integrated employers of Ms. Watson because they have common ownership, common labor relations, integrated operations, and common management.  Ciena and Boulevard Temple are joint employers of Ms. Watson because both entities maintained sufficient control over Ms. Watson's essential terms and conditions of employment.  Ciena and Boulevard Temple are alter egos of each other."

benefits will continue and not be changed." *Defendant's Exhibit B*. The letter also stated that Ciena/BTTC would "honor your previous service date [date of hire] at the facility for purposes of determining eligibility for benefits." *Id*. Finally, the letter indicated that the offer of employment and continued employment would be contingent "upon acceptable results of a...physical." *Id.*

On November 6, 2009, Ms. Watson appeared for a physical examination at Concentra Medical Centers ("Concentra"), which had contracted with Ciena to perform the exams. The examination form indicates that her blood pressure was extremely elevated, 238/136, and that she was "advised to go to ER STAT." (*Defendants' Exhibit E*). At her deposition, however, Ms. Watson testified that she was told to go to her primary care physician. *Doc. #31, Plaintiff's Exhibit O-5, Deposition of Diane Watson*, 86-87. Concentra also gave her with a form to provide to her physician, noting the high blood pressure reading, and requesting information "to assist us in making an appropriate medical decision regarding this patient's ability to perform their [sic] job duties." The form also directed the physician to "fax, mail or allow the patient to hand carry this information back to our facility." *Defendants' Exhibit G*.

Ms. Watson went to the Alsan Medical Clinic, which determined that due to hypertension, she was totally incapacitated from work from November 6 to November 11, 2009. *Plaintiff's Exhibit G*. Ms. Watson testified that she was prescribed a different medication, and that the doctor wanted her to take a few days off to see how she responded. *Watson Deposition, Plaintiff's Exhibit O-5,* 97. She gave Concentra's information request form to the doctor. *Watson Deposition*, 92-93.

Ms. Watson brought the work-release form from the Alsan Clinic (*Plaintiff's Exhibit G*) to Human Resources Manager Gwen Johnson, who told her she could not

return to work until the doctor released her to do so. *Id*. She was cleared to return to work on November 11th, *Plaintiff's Exhibit I*, and in fact returned to work that day. *Watson Deposition*, 103.

There was a delay in the completion of the sale. In a second letter dated December 1, 2009, Ciena informed Ms. Watson that the sale had been completed as of that date, and welcomed her to BTCC. *Defendant's Exhibit C*. On December 2, 2009, Ms. Watson signed the letter, indicating her acceptance of employment. *Id.*

Ms. Watson reported to Concentra a second time on December 8, 2009. At that time, her blood pressure was still elevated (although not as high as previously), at 184/112. *Plaintiff's Exhibit K*. She testified that the doctor told her that because her blood pressure was high, he was not releasing her to return to work. *Watson Deposition*, 110. She then telephoned Human Resources Director Johnson to inform her of what happened, and Ms. Johnson told her that "as of today, you are no longer employed." When Ms. Watson asked why, Ms. Johnson replied that it was because of her high blood pressure. *Id*. 110-111. During that conversation, Ms. Watson asked about disability coverage, and Ms. Johnson told her, "Well, Diane, you haven't worked long enough to get disability." *Id*. 124-125.

Ms. Watson returned to BTCC on December 14, 2009 to pick up her final paycheck. *Watson Deposition*, 116. She was given a letter, dated December 14th, stating that she was not eligible for rehire "because you failed the pre-employment physical exam." *Defendant's Exhibit L*. About a month later, she again spoke with Gwen Johnson, who told her that she was directed to fire Ms. Watson, and that she was fired because of her high blood pressure. *Watson Deposition*, 120.

Lisa Dimitrie had been the Director of Nursing at United Methodist, and in 2009 was the Administrator of the Boulevard Temple facility. *Defendants' Exhibit N, Deposition of Lisa Dimitrie*, 13-15, 20.  The Human Resources Manager reported to her. *Id*. 23. In her interrogatories, Ms. Dimitrie had stated under oath that "Plaintiff was terminated for failing to complete her pre-hire physical with Concentra," and that "Plaintiff failed to provide Concentra or Defendant with information from her primary care physician as required by Concentra."  *Id*. 109-110. She testified to not recalling whether she had any role in discharging Ms. Watson, and stated that she had no knowledge that would enable her to determine whether Ms. Watson was disabled.  *Id*. 110-111.  She testified that the only basis for her belief that Ms. Watson could not perform the essential functions of her job was that "she didn't complete her pre-employment physical."  *Id*. 111-112.  Ms. Dimitrie acknowledged that Human Resources Manager Gwen Johnson reported to her, and that Ms. Johnson could not discharge an employee without her knowing.  *Id*. 113.  After reiterating that Ms. Watson was terminated for not completing her physical, Ms. Dimitrie testified that she did not advise anyone to terminate Ms. Watson because of high blood pressure, and that no one advised her to terminate Ms. Watson for that reason. *Id*. 140, 147-148.

Contrary to Ms. Dimitrie's testimony, Gwenetta Johnson, the Human Resources Manager, testified that she discussed Ms. Watson's high blood pressure with Ms. Dimitrie after getting the doctor's report, and that Ms. Dimitrie told her that Ms. Watson should be terminated because of her high blood pressure. *Plaintiff's Exhibit O-2, Deposition of Gwenetta Johnson*, 23-24. Ms. Johnson testified, "High blood pressure, hypertension, whatever it was, that's why she was terminated." *Id*. 28.  Ms. Johnson stated that she talked with Ms. Watson twice in December of 2009, and that she informed Ms. Watson

that she was terminated because of her high blood pressure. *Id*. 29. She also told Ms. Watson that it was not her decision to terminate her, but that of her Administrator and Ciena. *Id*. 39-40.

Antonio Oddo was Ciena's Director of Labor Relations. He testified that he spoke with Ms. Johnson regarding whether Ms. Watson should be employed at the facility. *Plaintiffs' Exhibit O-3, Deposition of Antonio Oddo*, 53. He said that he was only aware of one of Ms. Watson's visits to Concentra, and that his conversation with Ms. Johnson most likely occurred shortly after she received the results of that examination. *Id*. 102.[2] Although it is unclear whether he was referring to this conversation with Ms. Johnson or a subsequent conversation with someone at the facility, Mr. Oddo testified that when the facility asked how to handle Ms. Watson's situation regarding her medical hold and medical restrictions, he replied that "if she was unable to perform the essential functions, that she could no longer work at the facility." *Id*. 90. However, he did not ask what Ms. Watson's essential job functions were. *Id.*

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).

---

[2] After being shown the Concentra reports from November 6, 2009 and December 8, 2009, Mr. Oddo testified that he could not recall whether his telephone call with the facility related to either Ms. Watson's first or second visit to Concentra. *Defendants' Reply Brief, Doc. #33, Deposition of Antonio Oddo*, 105-106.

Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III.   ANALYSIS
#### A.   ADA and PWDCRA Claims

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Sixth Circuit has held that Michigan's PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 597 (6th Cir.2002), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corporation, Inc*., 681 F.3d 312, 317 (6th Cir. 2012)(en banc). In this case, the claims and underlying facts regarding both the ADA and the PWDCRA are essentially the

same. I will therefore analyze both under the ADA framework. *See Till v. Spectrum Juvenile Justice Services*, 805 F.Supp.2d 354, 361 (E.D.Mich. 2011).

### 1. Plaintiff has Established Direct Evidence of Disability Discrimination

An ADA claim may be proved with either direct or circumstantial evidence. Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Bhama v. Mercy Mem'l Hosp. Corp.,* 416 Fed.Appx. 542, 552 (6th Cir.2011). Direct evidence "does not require the fact finder to draw any inferences to reach that conclusion." *Id.* "Direct evidence is sufficient to defeat a motion for summary judgment in employment discrimination cases." *Till, supra*, 805 F.Supp.2d at 361, citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002), where the Supreme Court stated, "[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." In a direct evidence claim, a plaintiff must show that he or she 1) has a disability, and 2) is "otherwise qualified" for the position, either "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 869 (6th Cir.2007).

#### a. Plaintiff is a Qualified Individual with a Disability

Plaintiff suffers from hypertension, or high blood pressure. There may have been a time when Defendants could more effectively challenge whether this condition constitutes a "disability" within the meaning of the ADA. With the 2008 amendments to the ADA, however, that time is past. 42 U.S.C. § 12102(1) defines "disability" as follows:

(1) Disability

"The term 'disability' means, with respect to an individual--

**(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;

**(B)** a record of such an impairment; or

**(C)** being regarded as having such an impairment (as described in paragraph (3)).

Section 4(A) provides that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."[3]  Section 2(a) defines "major life activities" as follows:

"For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, *performing manual tasks*, seeing, hearing, eating, sleeping, *walking, standing, lifting*, bending, speaking, *breathing*, learning, reading, concentrating, thinking, communicating, and *working*." (Emphasis added).

---

[3] In enacting the 2008 amendments, Congress repudiated Supreme Court decisions that narrowed the definition of disability, in particular *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002) and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). In *Jenkins v. National Bd. of Medical Examiners*, 2009 WL 331638, *2 - 3 (6th Cir. 2009), the Sixth Circuit explained:

"In the ADA Amendments Act, Congress made clear that it intends for the ADA to give broad protection to persons with disabilities and that the Supreme Court's holding in *Toyota* is at odds with Congress's intent. Congress stated in the findings of the Act that various Supreme Court holdings 'have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect' with the result that 'lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities.' Pub.L. No. 110-325, § 2(a)(4), (6)."

Thus, Defendants' reliance on *Salim v. MGM Grand Detroit, L.L.C.*, 106 Fed.Appx. 454 (6th Cir. 2004), which in turn was premised on *Sutton*, is misplaced in light of the 2008 amendments to the ADA.

Section 2(B) brings "major bodily functions" within the definition of major life activities, and defines "major bodily function" as follows:

> "For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, *respiratory, circulatory*, endocrine, and reproductive functions." (Emphasis added).

Section 4(E)(I) provides that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," including medication.

Section 3(A) sets forth an expansive explanation of when an individual is "regarded as" having an impairment:

> "**(A)** An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of *an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity*. (Emphasis added).

Given these newer statutory directives, and construing the statute, as we must, "in favor of broad coverage," Ms. Watson clearly qualifies as an individual with a disability. First, hypertension, even if controlled with medication or in remission, has been recognized as a disability that substantially limits a major life activity. *See Feldman v. Law Enforcement Associates Corp.*, 2013 WL 3288309, *8 (E.D.N.C. 2013)(listing hypertension as among the disorders "that Congress intended to include within the definition of a disability through the enactment of this provision"); *Garner v. Chevron Phillips Chemical Co., L.P.*, 834 F.Supp.2d 528, 539 (S.D.Tex. 2011)(same). Indeed, even before the 2008 amendments, hypertension could be considered a disability under the ADA. *See Szczesny v. General Elec. Co.*, 66 Fed.Appx. 388, 393, 2003 WL

21152956, *5 (3rd Cir. 2003)("Hypertension and cardiovascular conditions are recognized disabilities under EEOC regulations, *see* 29 C.F.R. § 1630.2(h).").

Plaintiff's testimony supports her claim that untreated, her condition limits her in breathing, walking, lifting, pulling and working. While Defendants argue that Ms. Watson's condition does not "substantially limit" her, but merely "slows her down," (although they also posit that she presents a risk to her patients as the result of her condition), there is at a minimum a question of fact on this issue that precludes summary judgment.

Moreover, Plaintiff has established a question of fact as to the "regarded as" portion of the disability definition. Based on her own testimony and that of Gwen Johnson, she was expressly terminated because of her high blood pressure. Under this prong of the statute, it does not matter whether her condition actually limited a major life activity.

Thus, Ms. Watson meets the definition of a person with a disability who qualifies for protection under the ADA.

### b. Plaintiff has Produced Direct Evidence of Discrimination

In *Till v. Spectrum Juvenile Justice Services, supra*, the plaintiff suffered (but recovered) from a heart attack. When she was released from the hospital, she called her supervisor, and claimed that she was told, "Oh, no, you can't work here. Have you applied for your social security disability? Do[es] your doctor know the type of work that you do?" *Id.*, 805 F.Supp.2d at 358. The Court found this statement to be direct evidence of discrimination under the ADA. In the present case, Ms. Watson called Human Resources Manager Johnson after her second Concentra appointment, and was directly told that she was being terminated because of her hypertension. Ms. Johnson admitted

that she told Ms. Watson she was being fired because of high blood pressure, and also testified that Ms. Dimitrie, the Administrator to whom she reported, specifically told her to fire Ms. Watson because of her blood pressure. While Ms. Dimitrie denies making that statement, and maintains that Ms. Watson was terminated because she did not complete her medical exam, those are questions of fact and credibility that must be left to the jury.

In addition, Ms. Watson has presented compelling evidence that she is "otherwise qualified" for the position of CENA, either with or without a reasonable accommodation, as long as she has proper medication. Specifically, she was employed at Boulevard Temple as a CENA for 12 years, and is currently working in that same position with a different employer.

Because Ms. Watson has proffered direct evidence of disability discrimination, summary judgment must be denied on her ADA and PWDCRA claims. *Till, supra*; *Swierkiewicz, supra*.

### 2. In the Alternative, Plaintiff has Established a Circumstantial Case

In *Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1105 (6th Cir. 2008), the Sixth Circuit summarized the standard for evaluating a claim of ADA discrimination based on circumstantial evidence:

> "Where, as here, the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, we require the plaintiff to establish a prima facie case, followed by the familiar *McDonnell Douglas* burden-shifting. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions. *Gribcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir.2001) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination. *Id.* To establish a prima facie case of discrimination under the ADA, a plaintiff must show '(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely

-12-

because of the disability.' *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir.2002). The third element requires that the plaintiff suffer an adverse employment action. *Plautz v. Potter,* 156 Fed.Appx. 812, 817 (6th Cir.2005)."

For the reasons discussed above, Ms. Watson has established a *prima facie* case of disability discrimination. She has presented evidence that (1) she is an individual with a disability; (2) she is otherwise qualified for the CENA position; and (3) that she suffered an adverse employment action on account of her disability. *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir.2002).[4]

Under the *McDonnell Douglas* formulation, the burden now shifts to the Defendants to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). Here, the Defendants contend that Ms. Watson was terminated because she did not complete her required pre-employment physical exam with Concentra. This alleged justification is supported by Ms. Dimitrie's testimony, satisfying the Defendants' burden of production.

The burden then shifts to Ms. Watson to show that the proffered reason for the Defendants' actions was not the true reason, but rather a pretext for discrimination. She may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *Smith v. Leggett Wire Co., supra*, 220 F.3d at 759 (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)).

---

[4] *Mahon* stated that a plaintiff must show that he or she was discriminated against solely because of the disability. However, that portion of the *Mahon* opinion was overruled by *Lewis v. Humboldt Acquisition Corporation, Inc*., 681 F.3d 312, 317 (6th Cir. 2012)(en banc)(the "sole-cause" standard "does not apply to claims under the ADA.").

Ms. Watson has produced significant evidence to show that the proffered reason for her termination–that she did not complete her physical exam–was not the real reason, but merely a pretext. First, and most obvious, is her own testimony and that of Human Resources Manager Johnson that Ms. Watson was specifically told she was being terminated on account of her high blood pressure, not because she failed to complete a physical exam. She was informed that hypertension was the reason for her termination on December 8, 2009, six days before the December 14th letter from Ciena stating that she had "failed" her physical.[5] In addition, Tony Oddo of Ciena testified that Boulevard Temple personnel asked him how to handle the situation with Ms. Watson's medical restrictions, and he replied that "if she was unable to perform the essential functions, that she could no longer work at the facility." This conversation centered on Ms. Watson's medical condition and her ability to perform her job, not on her failure to complete a physical exam.

In summary, whether analyzed as a direct evidence case or a circumstantial evidence case, material questions of fact exist as to whether Ms. Watson was terminated in violation of the ADA and the Michigan PWDCRA. Therefore, summary judgment must be denied as to those claims.

### B. FMLA Claims

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for . . . 'a serious health condition that makes the employee unable to perform the functions of the position of such

---

[5] There is a clear difference between "failing a physical" and "failing to complete" a physical. The former indicates deficient or negative clinical findings based on the medical examination. Thus, the letter of December 14th could be read to support the claim that Ms. Watson was in fact terminated because of her physical condition.

employee.'" *Wysong v. Dow Chemical Co.,* 503 F.3d 441, 446 (6th Cir. 2007)(*citing* 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)). "An employee need not specifically mention the FMLA when taking leave; all the employee must do is notify the employer that FMLA-qualifying leave is needed." *Chandler v. Specialty Tires of America (Tenn.), Inc.,* 283 F.3d 818, 825 (6th Cir.2002); 29 C.F.R. § 825.303(b).

A plaintiff can recover for violations of his FMLA rights under the "interference theory" (29 U.S.C. § 2615(a)(1)) and/or the "retaliation theory." *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005).

### 1. FMLA Interference

Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the Act. In establishing an interference claim, a plaintiff must demonstrate the following:

> "(1) [he/]she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled."

*Killian v. Yorozu Automotive Tennessee, Inc*., 454 F.3d 549, 556 (6th Cir. 2006)(*citing Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir.2005)).

Ms. Watson clearly meets factors (1) and (2). While it is a somewhat close question, I find that she also meets the notice requirement. Although an employee must provide sufficient notice of a request or need for FMLA leave, "the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 302(c). In *Cavin v. Honda of America,* 346 F.3d 713, 725 (6th Cir.2003), the Sixth Circuit stated:

> "An employee can provide sufficient notice to his employer that he needs FMLAqualifying leave without invoking the FMLA and without using the words 'leave' or 'leave of absence.' *The notice is sufficient if the employee provides enough information for the employer to reasonably conclude that*

*a leave is needed for a serious health condition*." (Emphasis added).

In *Eagle v. Hurley Medical Center*, _F.R.D._, 2013 WL 3270958, *8 (E.D.Mich. 2013), the Court noted, "Whether sufficient notice has been given is often a question of fact precluding summary judgment for the employer." (Collecting cases).  Here, Ms. Watson did not mention the FMLA in her December 8th conversation with Ms. Johnson, and in fact testified that she asked about disability coverage. However, she also told Ms. Johnson about the results of her physical exam, and that the doctor told her she could not return to work. The previous November, Ms. Johnson had told Ms. Watson that she could not return to work until she was cleared by a doctor, and of course Johnson knew that Ms. Watson was on a medical leave from November 6 to November 11, 2009. Thus, while not expressly articulated, it is reasonable to infer that Ms. Johnson, the Human Resources Manager, was given enough information to "reasonably conclude that a leave is needed for a serious health condition."  *Cavin, supra*.

As to the fourth factor, Ms. Watson was not afforded FMLA benefits; she was fired.

Thus, there are sufficient questions of material fact to deny summary judgment on Ms. Watson's FMLA interference claim.

### 2.  FMLA Retaliation

As to a "retaliation" claim, 29 U.S.C. § 2615(a)(2)(2) forbids "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. In establishing a *prima facie* retaliation claim, a plaintiff must show:

> "(1) [he/]she was engaged in an activity protected by the FMLA; (2) the employer knew that [the employee] was exercising . . . rights under the

-16-

> FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [employee]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action."

*Killian,* 454 F.3d at 556 (*citing Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir.2003)).

Ms. Watson took an FMLA-protected leave in November. Although that was before the sale of Boulevard Temple was completed, Defendants knew that she took the leave. In fact, Ms. Johnson told her at the time that she could not return to work until she was medically cleared to do so. Clearly an adverse employment action was taken against Ms. Watson. However, the retaliation claim falters on the final prong: there is scant evidence of a causal connection between her taking a medical leave in November and being terminated in December. Although, as discussed in the preceding section, there is evidence that Defendants' proffered reason for terminating Ms. Watson–that she failed to complete a physical exam–is pretextual, the only factually supported alternative reason is that she was fired on the basis of an actual or perceived disability, in violation of the ADA. There is a dearth of evidence, direct or circumstantial, that Ms. Johnson, Ms. Dimitrie, or anyone else at Ciena or BTCC retaliated against her because she took a five-day leave a month earlier, and no rational trier of fact could find retaliation on this record. Accordingly, summary judgment should be granted on Ms. Watson's FMLA retaliation claim.

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Doc. #28] be GRANTED IN PART AND DENIED IN PART, as follows:

(1) That as to Plaintiff's retaliation claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2614 *et seq.*, the Motion be GRANTED, and the FMLA

retaliation claim DISMISSED.

(2) That as to Plaintiff's FMLA interference claim, the Motion be DENIED.

(3) That as to Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L § 37.1101 *et seq*., the Motion be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: August 16, 2013

## CERTIFICATE OF SERVICE

I hereby certify on August 16, 2013, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 16, 2013: **None.**

                                                s/Terri L. Hackman
                                                Judicial Assistant to
                                                Magistrate Judge R. Steven Whalen
                                                (313) 234-5115